1  MELISSA W. COOK, ESQ.; SBN: 134791
   mwccoast@aol.com
2  JASON J. KENNEDY, ESQ.; SBN: 265391
   jason@mwcandassociates.com
3  MELISSA W. COOK & ASSOCIATES
   3444 Camino del Rio North, Suite 106
4  San Diego, California 92108
   Telephone: (619) 280-4302
5  Facsimile: (619) 280-4304

6  Attorneys for Plaintiff

7

8                UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  BOARD OF TRUSTEES OF THE SAN          )   CASE NO.: **'18 CV 0487 BAS WVG**
    DIEGO COUNTY CEMENT MASONS            )
12  PENSION TRUST FUND,                   )
                                          )   COMPLAINT FOR
13                Plaintiff,              )   COLLECTION OF
                                          )   WITHDRAWAL LIABILITY
14  v.                                    )   AND BREACH OF CONTRACT
                                          )
15  SOUTH COAST CONCRETE, INC., a         )
    California Corporation and DANIEL     )
16  HOWES, an individual,                 )
                                          )
17                Defendants.             )
                                          )
18

19      Plaintiff, the BOARD OF TRUSTEES OF THE SAN DIEGO COUNTY

20  CEMENT MASONS PENSION TRUST FUND ("Plaintiff" and/or "Pension Fund"),

21  for its Complaint against Defendant SOUTH COAST CONCRETE, INC., ("South

22  Coast") and Defendant DANIEL HOWES ("Howes") states and alleges as follows:

23              **JURISDICTION AND VENUE**

24      1.    This Court has jurisdiction over this case under Section 502(e) of the

25  Employee Retirement Income Security Act of 1974 ("ERISA"), as amended (29

26  U.S.C § 1132(e)), which grants the United States District Courts jurisdiction over

27  civil actions brought by a fiduciary pursuant to Section 502(a)(3) of ERISA (29

28  U.S.C. § 1132(a)(3)) to redress violations or enforce the terms of ERISA or an

1  employee benefit plan governed by ERISA.  Such jurisdiction exists without respect
2  to the amount in controversy or the citizenship of the parties, as provided in Section
3  502(f) of ERISA (29 U.S.C. § 1132(f)).

4      2.    The subject Pension Fund is administered by the Trustees in the City of
5  San Diego, County of San Diego.  Venue is therefore proper in this Court pursuant
6  to Section 502(e)(2) of ERISA (29 U.S.C. § 1132(e)(2)), as it is the district in which
7  the subject employee benefit plan is administered, it is the district in which the
8  relevant acts took place, and it is the district in which moneys are due and payable.

9      3.    To the extent this Complaint sets forth any state law claims, this Court
10  has supplemental jurisdiction over those claims pursuant 28 U.S.C. § 1367(a).

11  **PARTIES**

12      4.    Plaintiff Board of Trustees is the fiduciary of the San Diego County
13  Cement Masons Pension Trust Fund, which is a multiemployer plan under ERISA,
14  as defined in 29 U.S.C. § 1002(37)(A) and as used in 29 U.S.C. §§ 1132(g)(2) and
15  1145.

16      5.    Defendant South Coast Concrete, Inc. ("South Coast") was at all times
17  relevant to this Complaint a California corporation with its principal place of business
18  in San Diego, California.

19      6.    Defendant Daniel Howes, is the primary shareholder of South Coast, as
20  well as the Chief Executive Officer, Secretary, and Chief Financial Officer of South
21  Coast.  Howes primary residence is located in San Diego County, California.

22  **COUNT I**

23  **WITHDRAWAL LIABILITY PURSUANT TO 29 U.S.C. §1381 ET SEQ**.
   (Against Defendant South Coast)
24

25      7.    For a period of time prior to and including July 1, 2004 to June 13, 2015,
26  South Coast was a signatory or otherwise bound by a Collective Bargaining
27  Agreement ("CBA") under which South Coast was obligated to pay contributions to
28  //

Complaint for Collection of Withdrawal Liability and Breach of Contract    Case No.:

1  the Pension Fund in specified amounts for each hour worked by employees
2  performing work covered by the CBA.

3       8.     Substantially all of South Coast's employees for whom South Coast had
4  an obligation to contribute to the Pension Fund worked in the building and
5  construction industry.

6       9.     The Pension Fund primarily covers employees in the building and
7  construction industry.

8       10.    On June 13, 2015, South Coast permanently ceased to have an obligation
9  to make contributions to the Pension Fund for work performed by employees in the
10 jurisdictional area covered by the CBA.

11      11.    Upon information and belief, South Coast has continued to perform work
12 in the jurisdiction of the CBA of the type for which contributions were previously
13 required, and/or resumed such work within the five (5) year period after the date on
14 which South Coast ceased on have an obligation to contribute to the Pension Fund.

15      12.    In accordance with 29 U.S.C. § 1382, and in accordance with the
16 Pension Fund's employer withdrawal liability policy, the actuary for the Pension Fund
17 determined that South Coast owed $503,575.00 in complete withdrawal liability as
18 of the date of its withdrawal on June 13, 2015.

19      13.    By letter on January 6, 2017, the Pension fund notified South Coast that
20 South Coast had incurred withdrawal liability of $503,575.00 as a result of South
21 Coast ceasing to have an obligation to contribute to the Pension Fund.  A true and
22 accurate copy of that January 6, 2017, letter is attached as Exhibit A and incorporated
23 herein by reference.  Of note, the letter is mistakenly dated January 6, 2016, when the
24 letter was mailed on January 6, 2017.  Pursuant to the Certified Mail Receipt, the
25 letter was delivered on January 23, 2017.

26      14.    By the same letter attached as Exhibit A, the Pension Fund notified
27 South Coast that it could pay the withdrawal liability as a lump sum or by making
28 //

Complaint for Collection of Withdrawal Liability and Breach of Contract                    Case No.:

twenty four (24) quarterly payments of $24,497.00, plus a final payment of $14,104.00.

15.     By the same letter attached as Exhibit A, the Pension Fund notified South Coast that the quarterly payments were to commence within sixty (60) days of the date of the letter, March 7, 2017, as provided by 29 U.S.C. §1399(c)(2).

16.     By the same letter attached as Exhibit A, the Pension Fund notified South Coast of the manner in which South Coast could dispute the determination of its withdrawal liability.

17.     By letter dated March 29, 2017, South Coast made a request for review of its withdrawal liability, as provided by 29 U.S.C. §1399(b)(2)(A).   A true and accurate copy of that March 29, 2017, letter is attached as Exhibit B and incorporated herein by reference.

18.     By letter dated April 5, 2017, the Pension Fund responded to South Coast's request for review, as provided by 29 U.S.C. §1399(b)(2)(B).   The Pension Fund's review of South Coast's withdrawal liability did not change the assessment of such liability.   A true and accurate copy of that April 5, 2017, letter is attached as Exhibit C and incorporated herein by reference.

19.     By letter dated May 18, 2017, South Coast responded to the Pension Fund's April 5, 2017, letter.   By this letter, South Coast requested an opportunity to abate the assessed withdrawal liability.   A true and accurate copy of that May 18, 2017, letter is attached as Exhibit D and incorporated herein by reference.

20.     By letters dated June 26, 2017, and September 13, 2017, the Pension Fund explained the abatement process, and allowed South Coast to negotiate with the relevant local union regarding its status as a signatory employer.   A true and accurate copy of the June 26, 2017, and September 13, 2017, letters are attached as Exhibit E and incorporated herein by reference.

//

//

Complaint for Collection of Withdrawal Liability and Breach of Contract          Case No.:

21.    Thereafter, South Coast and the relevant local union entered into negotiations to allow South Coast to remain signatory and abate its withdrawal liability.

22.    However, on November 22, 2017, the Pension Fund informed counsel for South Coast that such abatement would not be possible as the relevant local union had refused to allow South Coast to remain signatory to the relevant collective bargaining agreement.    A true and accurate copy of the November 22, 2017, letter is attached as Exhibit F and incorporated herein by reference.

23.    South Coast did not make the first monthly payment within 60 days of the date of the letter attached as Exhibit A, in violation of 29 U.S.C. §1399(c)(2), nor has it subsequently made any payments to the Pension Fund related to the assessment of withdrawal liability.

24.    By the letter attached hereto as Exhibit F, the Pension Fund notified South Coast that its withdrawal liability payments were overdue and that if the outstanding withdrawal liability payments were not received within sixty (60) days of receipt of that November 22, 2017,letter, South Coast would be considered to be in default as provided by 29 U.S.C. §1399(c)(5).

25.    South Coast failed to cure its default within sixty (60) days after receipt of the letter attached as Exhibit F.

26.    Therefore, South Coast is in violation of 29 U.S.C. §1399(c) and is liable to the Pension Fund for the full amount of its outstanding withdrawal liability of $503,575.00.

27.    Neither South Coast nor the Pension Fund initiated arbitration over any dispute concerning the withdrawal liability determination.    Accordingly, it is appropriate for the Pension Fund to bring this civil action to collect the withdrawal liability as provided by 29 U.S.C. 1401(b).

28.    The Pension Fund's Trust Agreement provides that all delinquent contributions shall bear interest at the rate of ten percent (10%) per annum.  Thus, in

accordance with the Trust Agreement, 29 U.S.C. §1451(b) and 29 U.S.C. §1132(g)(2)(B), the Pension Fund is entitled to interest at the rate of ten percent (10%) per annum on South Coast's outstanding withdrawal liability from March 7, 2017, which was the date the first payment was due.

29. The Pension Fund's Trust Agreement assesses liquidated damages at the rate of eighteen percent (18%) per annum on delinquent contributions. Thus, in accordance with 29 U.S.C. §1451(b) and 29 U.S.C. §1132(g), the Pension Fund is entitled to liquidated damages at this rate on South Coast's outstanding withdrawal liability.

30. The Pension Fund's Trust Agreement provides that if the Pension Fund retains legal counsel to collect withdrawal liability, the employer is liable to the Pension Fund for its attorney's fees and costs. Thus, in accordance with the Trust Agreement and 29 U.S.C. §1132(g), the Pension Fund is entitled to its attorney's fees and costs.

## COUNT II

### BREACH OF WRITTEN CONTRACT
(Against Defendant Howes)

31. Prior to April 24, 2015, South Coast failed to properly pay contributions due to the Pension Fund as required by the relevant collective bargaining agreement.

32. On or about April 24, 2015, the Pension Fund filed a complaint against South Coast related to the delinquent contributions.

33. On November 5, 2015, the United States District Court, Southern District of California, entered a Default Judgment against South Coast in the amount of $106,760.63 in Civil Action No. 15cv917-BAS(BLM).

34. Thereafter, on or about September 19, 2016, South Coast, as well as Defendant Howes, signed a Settlement Agreement to resolve the outstanding Judgment entered against South Coast. The Settlement Agreement is attached hereto as Exhibit G and incorporated by reference herein.

35.     In the Settlement Agreement, Defendant Howes stipulated and agreed to be held individually liable and responsible for the amounts owed pursuant to the Settlement Agreement.

36.     The Settlement Agreement required South Coast, as well as Defendant Howes, to make a number of payments as spelled out in detail in the Settlement Agreement.   Thereafter, South Coast and Defendant Howes failed to make the payments as required by the Settlement Agreement.

37.     By the letter attached hereto as Exhibit F, the Pension Fund provided written Notice of Default to South Coast as required by the Settlement Agreement.

38.     South Coast and/or Defendant Howes have failed to cure the Default, and therefore, Defendant Howes has breached the Settlement Agreement, and as a such, the Pension Fund has suffered damage in the approximate amount of $106,760.63, plus interest at the rate of ten percent (10%) as required by the Settlement Agreement, as calculated at the time of trial.

**WHEREFORE**, on Count I, Plaintiff Board of Trustees of the San Diego County Cement Masons Pension Trust Fund prays for judgment against Defendant South Coast Concrete, Inc., as follows:

1.     For the principal amount of the withdrawal liability assessment of $503,575.00;

2.     For interest at the rate of ten percent (10%) per annum on the principal amount from March 7, 2017;

3.     For liquidated damages at the rate of eighteen percent (18%) per annum on the principal amount from March 7, 2017;

4.     For attorney's fees and costs, as provided by law; and

5.     For such other and further relief as the Court may deem just and proper.

**WHEREFORE**, on Count II, Plaintiff Board of Trustees of the San Diego County Cement Masons Pension Trust Fund prays for judgment against Defendant Daniel Howes as follows:

Complaint for Collection of Withdrawal Liability and Breach of Contract                    Case No.:

1      1.      For the principal amount due on the Settlement Agreement in the amount

2  of $106,760.63, minus any amounts paid toward the Settlement Agreement as

3  calculated at the time of trial;

4      2.      For interest at the rate of ten percent (10%) per annum on the principal

5  amount from September 19, 2016;

6      3.      For attorney's fees and costs, as provided by law; and

7      4.      For such other and further relief as the Court may deem just and proper.

8

9

10  DATED: March _6_, 2018                   MELISSA W. COOK & ASSOCIATES

11
                                            By: S/ Jason J. Kennedy
12                                              Jason J. Kennedy
                                                Attorneys for Plaintiff
13                                              Email: jason@mwcandassociates.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -

# SAN DIEGO COUNTY CEMENT MASONS TRUST FUNDS

January 6, 2016

Southcoast Concrete
5111 Santa Fe St – Suite G
San Diego, CA 92109

Re:    San Diego County Cement Masons Pension Plan
        Notification and Demand for Payment of Employer Withdrawal Liability

Dear Sirs:

Our records indicate that the Employer has ceased to have an obligation to contribute to the Pension Plan, and has continued to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions to the plan were previously required. This letter provides you with notice of the amount of the Employer's withdrawal liability pursuant to ERISA Section 4219 (29 U.S.C. § 1399) and makes a demand for payment as specified below. An employer who withdraws from the San Diego County Cement Masons Pension Plan (the "Plan") is generally liable to the Trust for a share of the Plan's unfunded vested benefits, as determined under the withdrawal liability rules adopted by the Trustees of the Trust pursuant to the Multiemployer Pension Plan Amendments Act of 1980.

**Withdrawal Liability Calculation and Payment:**

Under ERISA Section 4219(c), the Employer is required to pay withdrawal liability in quarterly installment payments over a period of years necessary to fully amortize the liability, but for no longer than a 20-year period. The Employer's total withdrawal liability was determined to be $503,575. Additional information concerning the Employer's withdrawal liability amount and the corresponding payment schedule is enclosed. The Employer may either pay its withdrawal liability payments quarterly or prepay the total amount due.

If paid quarterly, twenty-four payments of $24,497 followed by a final payment of $14,104 would be due. This quarterly payment was calculated by determining the average of your highest consecutive 3-year annual number of contribution base units ("hours") during the prior 10 Plan years, multiplied by the highest contribution rate at which you had an obligation to contribute under the Plan during the prior 10 Plan years, including the Plan year in which you withdrew[1]. This figure was subsequently divided by four to determine the applicable quarterly amount. The details supporting this calculation are provided in the attached letter from the Plan's actuary.

The withdrawal liability amounts apply only if the withdrawal is not part of a mass withdrawal. In the event of a mass withdrawal, the liability amount could be significantly larger and the withdrawal liability payments will continue beyond the 20-year maximum provided for under ERISA Section 4219(c)(1)(B).

---

[1] If earlier, reflecting the last Plan Year for which contributions were made to the Fund.

3737 Camino del Rio South, Suite 300 • San Diego, CA 92108
Phone 619-8       519) 632-5682
www.sdcementben   EXHIBIT A   sdcementbenefits.org

9

# SAN DIEGO COUNTY CEMENT MASONS TRUST FUNDS

The first quarterly payment, or the total annual amount if you choose to prepay, is due no later than 60 days after receipt of this letter, as required by ERISA Section 4219(c)(2); 29 U.S.C. § 1399(c)(2). If you choose to pay quarterly, the first payment of $24,497 would be due by March 7, 2017. After receipt of the first quarterly payment, you will be sent a further notification regarding your schedule of quarterly payments if you choose this payment option.

Payments by check should be made payable to the "San Diego County Cement Masons Pension Plan" and mailed to the Administrative Office of the Trust at:

San Diego County Cement Masons Pension Plan
c/o BeneSys, Inc.
3737 Camino Del Rio South, Suite 300
San Diego, CA 92108

No later than 90 days after you receive this Notice, you may request in writing that the Trust review any specific item relating to the determination of the Employer's withdrawal liability or of the schedule of its quarterly installment payments. During this period, you may also identify in writing any errors in the determination of the Employer's allocable share of the Plan's unfunded vested benefits and may furnish the Trust with additional relevant information. However, the Employer is still required to make payments on schedule during the pendency of any appeal. A request for review should be sent to the Administrative Office of the Trust at the same address listed above. If you file a timely request for review with the Trust, the Trust, after a review of any matter raised, will notify you in writing of its decision, the basis for the decision, and the reasons for any change in the Employer's withdrawal liability or schedule of quarterly installment payments.

We recommend that you consult with your own advisors regarding the Employer's withdrawal liability, as well as its potential membership in any controlled group of corporations. If you have any questions about this matter, please contact me at the Plan's administrative office at (619) 849-1051.

Very truly yours,

Steven Crummy
Plan Administrator

cc:    Melissa Cook, Esq.
       Jonathan Hassen
       Sheri Gordon

3737 Camino del Rio South, Suite 300 • San Diego, CA 92108
Phone 619-8          19) 632-5682
www.sdcementbene   EXHIBIT A   :dcementbenefits.org

10



# RAEL & LETSON
## CONSULTANTS AND ACTUARIES
2800 CAMPUS DRIVE, SUITE 150 ◆ SAN MATEO, CALIFORNIA 94403
TELEPHONE (650) 341-3311 ◆ FAX (206) 445-1840
WWW.RAEL-LETSON.COM

December 8, 2016

***VIA EMAIL***

Mr. Steven Crummy
BeneSys, Inc.
3737 Camino del Rio South, Suite 300
San Diego, California 92108

Re:    San Diego County Cement Masons Pension Plan
       Withdrawal Liability Assessment – South Coast Concrete

Dear Steve:

As requested, we have calculated the withdrawal liability assessment from the San Diego County Cement Masons Pension Plan for South Coast Concrete for a withdrawal during the 2015/2016 Plan Year. The withdrawal liability for South Coast Concrete is **$503,575**. This assessment is based on the contributions reported by the Plan Administrator for all employers in aggregate as well as information provided for South Coast Concrete with respect to employer contributions. The withdrawal liability assessment is due within 60 days of the date the demand letter is provided to the company and may be paid in a single sum or in quarterly payments, consisting of 24 payments of **$24,497** plus a final payment of **$14,104**.

The calculations for this employer are summarized in Exhibits I-IV; our methods and assumptions are summarized in Exhibit V.

***UVBL and Withdrawal Liability Method***

The calculation of withdrawal liability was determined in accordance with our understanding of the Plan's procedures and assumptions for determining withdrawal liability. The unfunded vested benefits liability (UVBL) calculation for the San Diego County Cement Masons Pension Plan is made using the market value of assets and the present value of vested benefits used to fund the Plan. This calculation is based on the assumptions in effect as of June 30, 2015 and the results from the July 1, 2015 actuarial valuation.

The allocation method used by the San Diego County Cement Masons Pension Plan is the Presumptive Method as described in 29 U.S.C. § 1391(b)(1). The presumption under this method is that the UVBL decreases each year by 5% of the original balance. Each year's UVBL is compared to the presumed outstanding balance from previous years. The result is a series of UVBL "pools" which are also assumed to decrease by 5% of their original balances each year. The employer is then assigned a proportional share of each year's UVBL pool, with the proportion being equal to the employer's relative share of the total contribution to the Plan for

**EXHIBIT A**

11

Mr. Steven Crummy
BeneSys, Inc.
December 8, 2016
Page 2

the five years ending with the date associated with each UVBL pool. The sum total of each year's proportional share represents the employer's total withdrawal liability (not less than zero).

### *Data, Assumptions, Methods and Plan Provisions*

Major assumptions and methods used to calculate the withdrawal liability are described below.

- Employer contributions and hours history were provided by BeneSys, Inc. The calculation is subject to change to the extent a withdrawal is deemed to occur in a plan year other than the 2015/2016 Plan Year.

- We have assumed there are no prior outstanding claims that can be reasonably expected to be collected from previous withdrawn employers and that there were not any prior withdrawals from the Plan during the previous five plan years that would affect the outcome of this calculation.

- We assumed that no withdrawal liability was previously assessed and no withdrawal liability payments have been made by any employers.

Under 29 U.S.C. § 1301(b), withdrawal liability calculations treat all trades or businesses under common control as being one employer. If the withdrawing employer is a member of a controlled group of employers which includes other entities that have made contributions to the Plan, this calculation will need to be revised to reflect the effect of other controlled group contributions.

### *Professional Qualifications*

I am available to answer any questions on the material contained in this letter or to provide further details as may be appropriate. The undersigned credentialed actuary meets the Qualification Standards of the American Academy of Actuaries to render the actuarial opinions contained in this letter. I am not aware of any direct or material indirect financial interest or relationship, including investments or other services, that could create a conflict of interest that would impair the objectivity of our work.

Sincerely,

Jonathan Hassen, E.A., F.C.A., M.A.A.A.

Enclosures

**RAEL & LETSON**
CONSULTANTS AND ACTUARIES

EXHIBIT A

12

## EXHIBIT I
### SAN DIEGO COUNTY CEMENT MASONS PENSION PLAN
#### DEVELOPMENT OF RATIOS USED FOR EMPLOYERS WITHDRAWING IN THE 2015/2016 PLAN YEAR

| Plan Year Ended 6/30 | Unfunded Vested Benefits (UVB) | Allocation of UVB (or Change in UVB) | | Reallocated Amounts | | Total Unamortized at 6/30/2015 | Total Employer Contributions | Five-year Total Contributions | Five-year Contributions for Employers Withdrawing in Year | Net Five-year Total Contributions | Ratio of Unamort UVB to Net 5-Yr Total Contributions |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Original Amount | Unamortized at 6/30/2015 | Original Amount | Unamortized at 6/30/2015 | | | | | | |
| 1998 | $0 | $0 | $0 | $0 | $0 | $0 | $ 278,545 | | $0 | | |
| 1999 | 0 | 0 | 0 | 0 | 0 | 0 | 245,609 | | 0 | | |
| 2000 | 0 | 0 | 0 | 0 | 0 | 0 | 295,795 | | 0 | | |
| 2001 | 0 | 0 | 0 | 0 | 0 | 0 | 348,798 | | 0 | | |
| 2002 | 4,108,000 | 4,108,000 | 1,437,800 | 0 | 0 | 1,437,800 | 311,815 | $1,480,562 | 0 | $1,480,562 | 0.971118 |
| 103 | 0 | (3,902,600) | (1,561,040) | 0 | 0 | (1,561,040) | 387,336 | $1,589,353 | 0 | $1,589,353 | (0.982186) |
| 104 | 735,000 | 745,270 | 335,372 | 0 | 0 | 335,372 | 380,255 | 1,723,999 | 0 | 1,723,999 | 0.194531 |
| 105 | 793,000 | 105,534 | 52,767 | 0 | 0 | 52,767 | 334,766 | 1,762,970 | 0 | 1,762,970 | 0.029931 |
| 106 | 1,389,000 | 648,810 | 356,846 | 0 | 0 | 356,846 | 385,926 | 1,800,098 | 0 | 1,800,098 | 0.198237 |
| 107 | 11,138,114 | 9,834,364 | 5,900,618 | 0 | 0 | 5,900,618 | 522,690 | 2,010,973 | 0 | 2,010,973 | 2.934210 |
| 108 | 12,784,517 | 2,223,372 | 1,445,192 | 0 | 0 | 1,445,192 | 510,468 | 2,134,105 | 0 | 2,134,105 | 0.677189 |
| 2009 | 14,298,100 | 2,201,721 | 1,541,205 | 0 | 0 | 1,541,205 | 363,218 | 2,117,068 | 0 | 2,117,068 | 0.727990 |
| 2010 | 15,704,478 | 2,204,601 | 1,653,451 | 0 | 0 | 1,653,451 | 487,381 | 2,269,683 | 0 | 2,269,683 | 0.728494 |
| 2011 | 22,014,320 | 7,218,296 | 5,774,637 | 0 | 0 | 5,774,637 | 742,969 | 2,626,726 | 0 | 2,626,726 | 2.198416 |
| 2012 | 28,177,029 | 7,432,077 | 6,317,265 | 0 | 0 | 6,317,265 | 970,910 | 3,074,946 | 0 | 3,074,946 | 2.054431 |
| 2013 | 27,436,325 | 900,269 | 810,242 | 0 | 0 | 810,242 | 1,394,264 | 3,958,742 | 0 | 3,958,742 | 0.204 |
| 2014 | 25,518,390 | (231,950) | (220,353) | 0 | 0 | (220,353) | 1,418,642 | 5,014,166 | 0 | 5,014,166 | (0.043) |
| 2015 | 27,022,973 | 3,178,972 | 3,178,972 | 0 | 0 | 3,178,972 | 1,923,128 | 6,449,913 | 0 | 6,449,913 | 0.492871 |

PBGC Tech Update 10-3 Unamortized Adjustable Benefits (UAB):

| UAB as of 7/1/2014 | UAB as of 6/30/2015 | Net Five-year Total Contributions | Ratio of UAB to Total Contributions |
|---|---|---|---|
| 40,333 | 38,789 | 6,449,913 | 0.006014 |

EXHIBIT A

13

### *EXHIBIT II*
### *SAN DIEGO COUNTY CEMENT MASONS PENSION PLAN*
### *DETERMINATION OF WITHDRAWAL LIABILITY*

*Employer Name: South Coast Concrete*

*Plan Year of Withdrawal: 2015/2016*

| Plan Year Ended 6/30 | (1) Ratio of Unamortized UVB to Net 5-Year Total Contributions | (2) 5-Year Employer Contribution History* | (3) (1) x (2) |
|---|---|---|---|
| 2002 | 0.971118 | 0.00 | 0 |
| 2003 | (0.982186) | 0.00 | 0 |
| 2004 | 0.194531 | 0.00 | 0 |
| 2005 | 0.029931 | 480.24 | 14 |
| 2006 | 0.198237 | 7,645.20 | 1,516 |
| 2007 | 2.934210 | 17,247.93 | 50,609 |
| 2008 | 0.677189 | 28,918.03 | 19,583 |
| 2009 | 0.727990 | 36,930.33 | 26,885 |
| 2010 | 0.728494 | 45,454.41 | 33,113 |
| 2011 | 2.198416 | 65,994.83 | 145,084 |
| 2012 | 2.054431 | 80,522.16 | 165,427 |
| 2013 | 0.204672 | 91,926.18 | 18,815 |
| 2014 | (0.043946) | 100,273.09 | (4,407) |
| 2015 | 0.492871 | 94,080.52 | 46,370 |

*(4) Employer's Share of UVB Pools: Sum of Column (3)*     $503,009

*(5) Deductible (calculated below)*     $0

*(6) Employer's Net Withdrawal Liability: (4) – (5)***     $503,009

*(7) Unamortized Adjustable Benefit (UAB) factor as of 6/30/2015*     0.006014

*(8) Employer's Share of UAB (5 years ER conts ending 6/30/2015) x (7)*     $566

*(9) Employer's Total Withdrawal Liability (6) + (8)*     $503,575

*Deductible Calculation:*

*(a) De Minimis: Lesser of $50,000 and 0.75% of the 6/30/2015 UVB:*     $50,000

*(b) Item (4) minus $100,000, but not less than zero:*     $403,009

*(c) Deductible: (a) minus (b), but not less than zero:*     $0

\* *Each cell of this column represents a 5-year history of the employer's contribution history ending in the row's noted plan year.*

\*\* *The Net Withdrawal Liability cannot be less than zero.*

### EXHIBIT III
### SAN DIEGO COUNTY CEMENT MASONS PENSION PLAN
### DETERMINATION OF WITHDRAWAL LIABILITY QUARTERLY PAYMENT

*Employer Name: South Coast Concrete*
*Plan Year of Withdrawal: 2015/2016*

(A) *Employer's Liability from Exhibit II*      $503,575

*Employer's contributory hours for the ten Plan Years immediately preceding the year of withdrawal and contribution rates for the ten Plan Years ending with the Plan Year in which withdrawal occurred:*

| Plan Year Ended 6/30 | Contributory Hours | Consecutive 3-Year Average |
|---|---|---|
| 2006 | 9,334.50 | |
| 2007 | 9,532.50 | |
| 2008 | 17,202.00 | 12,023.00 |
| 2009 | 5,838.50 | 10,857.67 |
| 2010 | 3,473.50 | 8,838.00 |
| 2011 | 9,894.16 | 6,402.05 |
| 2012 | 4,841.00 | 6,069.55 |
| 2013 | 4,875.50 | 6,536.89 |
| 2014 | 2,290.50 | 4,002.33 |
| 2015 | 345.00 | 2,503.67 |

(B) *Highest 3-Year Consecutive Average contributory hours for the ten Plan Years immediately preceding the year of withdrawal*      12,023.00

(C) *Highest hourly contribution rate at which the Employer had an obligation to contribute under the Plan during the ten Plan Years ending with the Plan Year in which withdrawal occurred [1]*      $8.15

(D) *Annual Payment (B) × (C)*      $97,987

(E) *Quarterly Payment [(D) ÷ 4]*      $24,497

---

[1] *If earlier, reflecting the last Plan Year for which contributions were paid to the Fund.*

EXHIBIT A

15

### EXHIBIT IV
### SAN DIEGO COUNTY CEMENT MASONS PENSION PLAN
### QUARTERLY PAYMENT SCHEDULE

*Employer Name: South Coast Concrete*
*Plan Year of Withdrawal: 2015/2016*

**Amortization and Payment Schedule**
Interest at 7.50%

(a)

| Amortization Schedule | | | | |
|---|---|---|---|---|
| Year | Balance | Paid | Interest | Remaining |
| 1 | 503,575 | 97,988 | 30,419 | 436,006 |
| 2 | 436,006 | 97,988 | 25,351 | 363,369 |
| 3 | 363,369 | 97,988 | 19,904 | 285,285 |
| 4 | 285,285 | 97,988 | 14,047 | 201,344 |
| 5 | 201,344 | 97,988 | 7,752 | 111,108 |
| 6 | 111,108 | 97,988 | 984 | 14,104 |
| 7 | 14,104 | 14,104 | 0 | 0 |
| 8 | 0 | 0 | 0 | 0 |
| 9 | 0 | 0 | 0 | 0 |
| 10 | 0 | 0 | 0 | 0 |
| 11 | 0 | 0 | 0 | 0 |
| 12 | 0 | 0 | 0 | 0 |
| 13 | 0 | 0 | 0 | 0 |
| 14 | 0 | 0 | 0 | 0 |
| 15 | 0 | 0 | 0 | 0 |
| 16 | 0 | 0 | 0 | 0 |
| 17 | 0 | 0 | 0 | 0 |
| 18 | 0 | 0 | 0 | 0 |
| 19 | 0 | 0 | 0 | 0 |
| 20 | 0 | 0 | 0 | 0 |

| Payment Schedule | |
|---|---|
| Number of Payments | Payment |
| 24 | 24,497 |
| 1 | 14,104 |
| **Total Payments** | $        602,032 |

### *EXHIBIT V*
### *SUMMARY OF ACTUARIAL ASSUMPTIONS/METHODS*

#### *METHODS*

| | |
|---|---|
| *Actuarial Cost Method* | Unit Credit Cost Method. |
| *Asset Valuation Method* | Market Value. |
| *Method for Computing Withdrawal Liability* | Presumptive Method (as described under ERISA §4211(b)(2)). |
| *De Minimis Rule* | Default Method (as described under ERISA Section 4209(a)). |
| *Recognition of Adjustable Benefits* | Simplified Method pursuant to PBGC Technical Update 10-3. |

#### *ASSUMPTIONS*

| | |
|---|---|
| *Interest Discount Rate* | 7.5% compounded annually. |
| *Investment Yield* | 7.5% compounded annually, net of all expenses. |
| *Mortality* | RP-2000 Combined Healthy Blue Collar Mortality Table, projected to 2010 (Scale AA). |
| *Turnover* | Table T-8 of the <u>Actuary's Pension Handbook</u> (Crocker-Sarason-Straight) less 51 GAT. |

*Retirement Rates*

| <u>Age</u> | <u>Rate</u> |
|---|---|
| 55-57 | 15% |
| 58 | 35% |
| 59-64 | 15% |
| 65+ | 100% |

Vested Inactive participants who have at least 500 hours after June 30, 1990 are assumed to retire at age 58. All other Vested Inactive participants are assumed to retire at age 65.

| | |
|---|---|
| *Form of Benefit* | All participants are assumed to elect a Life Annuity. |
| *Marriage* | 80% married with wives three years young than their spouses. |
| *Future Cost of Living Increases* | Benefits eligible for COLA increases are assumed to increase 2% annually in future years. |
| *Missing Data* | If not specified, participants are assumed to be male and the same age as the average of participants with the same status code. |



**RAEL & LETSON**
CONSULTANTS AND ACTUARIES

**EXHIBIT A**

17

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

SOUTHCOAST CONCRETE
5111 SANTA FE ST   SUITE G
SAN DIEGO  CA  92109

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:           ☐ No

PACIFIC BEACH 92109
JAN 2 3 2017
USPS

3. Service Type
☐ Certified Mail    ☐ Priority Mail Express™
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7016 1370 0000 0526 3670

PS Form 3811, July 2013              Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL  US

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $         Postmark
☐ Certified Mail Restricted Delivery $          Here
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

JAN 06 2016

0301 Steve

Postage
$

Total P.
$

Sent To
SOUTHCOAST CONCRETE
Street a 5111 SANTA FE ST   SUITE G
City, St SAN DIEGO  CA  92109

7016 1370 0000 0526 3670

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

EXHIBIT A

18

# BRUCKER
# & MORRA

ALEX M. BRUCKER
MEREDITH J. SESSER *

MARIA LAGMAN-MAPOY
LEGAL ASSISTANT

* A PROFESSIONAL CORPORATION

Leaders in ERISA and Benefits Law

LINDA RUSSANO MORRA
(RETIRED)

March 29, 2017

VIA CERTIFIED MAIL & EMAIL

Mr. Steven Crummy
Plan Administrator
San Diego Cement Masons Trust Funds
3737 Camino del Rio South, Suite 300
San Diego, CA 92108

   Re: South Coast Concrete, Inc.
      Employer Withdrawal Liability Notice and Demand for Payment

Dear Mr. Crummy:

  This firm represents South Coast Concrete, Inc. ("South Coast") in connection with the assessment of alleged withdrawal liability from the San Diego Cement Masons Trust Funds (the "Fund"). This letter responds to your Employer Withdrawal Liability Notice and Demand for Payment, dated January 6, 2017 (copy attached), and represents a formal request for review of withdrawal liability and questions whether South Coast did withdraw from the Fund.

  **First**, South Coast, did not withdraw from the Fund. South Coast continues to pay pension contributions to the Fund. In fact the Cement Masons Local No. 500 caused its members not to accept employment with South Coast. In a letter from the Cement Masons Local No. 500 dated June 10, 2015 (copy attached), the Local No. 500 informed their members that they should not accept any future work from South Coast, thereby forcing South Coast to operate without Cement Masons Union employees.

  Accordingly, South Coast did not withdraw from the Fund, the Fund withdrew from South Coast.

  **Second**, Due to the employer's insolvency, and the operation of ERISA Section 4225, we believe that no withdrawal liability exists.

10866 Wilshire Boulevard, 10ᵗʰ floor ▪ Los Angeles, CA 90024
310.475.7540 ▪ Fax ___ ___ ____   ▪   w.pensionlawyers.com

**EXHIBIT B**

19



Mr. Steven Crummy, Plan Administrator
San Diego Cement Masons Trust Funds
March 29, 2017
Page 3

ERISA Section 4225 provides for limitations on the amount of withdrawal liability in the case of insolvency of the contributing employer or a bona fide sale of all or substantially all of the employer's assets in an arm's length transaction to an unrelated party. Where such employer's liquidation or distribution value does not exceed $5,000,000, the employer's withdrawal liability is limited to a percentage of the employer's liquidation or distribution value. For reasons set forth below, we believe the liquidation or distribution value of South Coast is $0.

Attached is a copy of South Coast Concrete's Financial Statement as of the year ended December 31, 2016. Note that the balance sheet of South Coast shows total year-end assets in the amount of $318,823 (including accounts receivable without a reserve for uncollectibles) and total liabilities in the amount of $359,170 reflecting a net insolvency of at least $41,000. Most significantly this does not include the Fund's Withdrawal Liability demand Fund of $503,575.

As can be plainly demonstrated, South Coast is financially "insolvent" and with the addition of the $503,575 of claimed withdrawal liability it will be forced to file Bankruptcy. South Coast is currently speaking with Bankruptcy counsel and is seriously considering filing.

We appreciate your review of this matter. We reserve the right to supplement the information in this letter. Accordingly, on the basis of South Coast's insolvency and the possibility of filing Bankruptcy and the fact that South Coast did not withdraw from the Fund, please be advised that based on the above facts and Section 4225 of ERISA, we believe that its alleged withdrawal liability, assuming a withdrawal had occurred, would be $0.00.

Please let me know if any additional information is needed.

Very truly yours,

Alex M. Brucker

/Encls.
cc: South Coast Concrete
S/docs M-Z/Vern2/Crummy.1

**EXHIBIT B**

20

# SAN DIEGO COUNTY CEMENT MASONS TRUST FUNDS

January 6, 2016

Southcoast Concrete
5111 Santa Fe St – Suite G
San Diego, CA 92109

Re:   San Diego County Cement Masons Pension Plan
      Notification and Demand for Payment of Employer Withdrawal Liability

Dear Sirs:

Our records indicate that South Coast Concrete (the "Employer") experienced a complete withdrawal as a contributing employer from the San Diego County Cement Masons Pension Plan during the 2015/2016 Plan Year.  This letter provides you with notice of the amount of the Employer's withdrawal liability pursuant to ERISA Section 4219 (29 U.S.C. § 1399) and makes a demand for payment as specified below.  An employer who withdraws from the San Diego County Cement Masons Pension Plan (the "Plan") is generally liable to the Trust for a share of the Plan's unfunded vested benefits, as determined under the withdrawal liability rules adopted by the Trustees of the Trust pursuant to the Multiemployer Pension Plan Amendments Act of 1980.

Withdrawal Liability Calculation and Payment:

Under ERISA Section 4219(c), the Employer is required to pay withdrawal liability in quarterly installment payments over a period of years necessary to fully amortize the liability, but for no longer than a 20-year period.  The Employer's total withdrawal liability was determined to be $503,575.  Additional information concerning the Employer's withdrawal liability amount and the corresponding payment schedule is enclosed.  The Employer may either pay its withdrawal liability payments quarterly or prepay the total amount due.

If paid quarterly, twenty-four payments of $24,497 followed by a final payment of $14,104 would be due. This quarterly payment was calculated by determining the average of your highest consecutive 3-year annual number of contribution base units ("hours") during the prior 10 Plan years, multiplied by the highest contribution rate at which you had an obligation to contribute under the Plan during the prior 10 Plan years, including the Plan year in which you withdrew[1]. This figure was subsequently divided by four to determine the applicable quarterly amount. The details supporting this calculation are provided in the attached letter from the Plan's actuary.

The withdrawal liability amounts apply only if the withdrawal is not part of a mass withdrawal. In the event of a mass withdrawal, the liability amount could be significantly larger and the withdrawal liability payments will continue beyond the 20-year maximum provided for under ERISA Section 4219(c)(1)(B).

---

[1] If earlier, reflecting the last Plan Year for which contributions were made to the Fund.

**EXHIBIT B**

21

# SAN DIEGO COUNTY CEMENT MASONS TRUST FUNDS

The first quarterly payment, or the total annual amount if you choose to prepay, is due no later than 60 days after receipt of this letter, as required by ERISA Section 4219(c)(2); 29 U.S.C. § 1399(c)(2). If you choose to pay quarterly, the first payment of $24,497 would be due by March 7, 2017. After receipt of the first quarterly payment, you will be sent a further notification regarding your schedule of quarterly payments if you choose this payment option.

Payments by check should be made payable to the "San Diego County Cement Masons Pension Plan" and mailed to the Administrative Office of the Trust at:

San Diego County Cement Masons Pension Plan
c/o BeneSys, Inc.
3737 Camino Del Rio South, Suite 300
San Diego, CA 92108

No later than 90 days after you receive this Notice, you may request in writing that the Trust review any specific item relating to the determination of the Employer's withdrawal liability or of the schedule of its quarterly installment payments. During this period, you may also identify in writing any errors in the determination of the Employer's allocable share of the Plan's unfunded vested benefits and may furnish the Trust with additional relevant information. However, the Employer is still required to make payments on schedule during the pendency of any appeal. A request for review should be sent to the Administrative Office of the Trust at the same address listed above. If you file a timely request for review with the Trust, the Trust, after a review of any matter raised, will notify you in writing of its decision, the basis for the decision, and the reasons for any change in the Employer's withdrawal liability or schedule of quarterly installment payments.

We recommend that you consult with your own advisors regarding the Employer's withdrawal liability, as well as its potential membership in any controlled group of corporations. If you have any questions about this matter, please contact me at the Plan's administrative office at (619) 849-1051.

Very truly yours,

Steven Crummy
Plan Administrator

cc:   Melissa Cook, Esq.
      Jonathan Hassen
      Sheri Gordon

3737 Camino del Rio South, Suite 300 • San Diego, CA 92108
Phone 619-849-1062 • Fax (619) 632-5682
www.sdcementbenefits.org • staff@sdcementbenefits.org
EXHIBIT B

22



# CEMENT MASONS LOCAL NO. 500

O.P. & C.M.I.A. - A.F.L.-C.I.O.

1605 N. SUSAN STREET • SANTA ANA, CALIFORNIA 92703
OFFICE PHONE: (714) 554-0730 • FAX: (714) 265-0780
www.cementmasonslocal500.org

*Jaime Barton*
Financial Secretary-Treasurer
Business Manager

June 10, 2015

Dear Sir and Brother:

On June 8, 2015, the Board of Trustees of the San Diego County Cement Masons Trust Funds voted to direct the Operative Plasterers' and Cement Masons' Local Union 500/Area 744, to remove the employees of South Coast Concrete due to the fact that this employer continues to fail to timely report and pay contributions to the Trust Funds and has done so for several years. The Boards of Trustees are unwilling to permit this continued conduct any longer. The Boards of Trustees believe their action is in the best interest of the Participants and have exercised their authority under Section 17(b) of the Master Labor Agreement to give such direction to the Union.

Therefore, you are hereby notified that effective, Saturday, June 13, 2015, you are instructed to TERMINATE your employment with South Coast Concrete. Should you continue to remain in the employ of South Coast Concrete after June 13, 2015, you may be subject to the penalties set forth in the Constitution of the Union.

If you have any questions regarding this matter, please contact me at (619) 726-7983.

Fraternally,

Jaime Barton, Financial Secretary
Business Manager
Cement Masons Local Union No. 500

cc: Mr. Dan Howse
    Mr. Steve Crummy

**EXHIBIT B**

23



11:34 AM
03/27/17
Accrual Basis

**South Coast Concrete, Inc.**
**Balance Sheet**
**As of December 31, 2016**

|  | Dec 31, 16 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| US Bank Checking | -2,977.78 |
| **Total Checking/Savings** | -2,977.78 |
| **Accounts Receivable** | |
| Accounts Receivable | 92,545.77 |
| **Total Accounts Receivable** | 92,545.77 |
| **Other Current Assets** | |
| Loans to Shareholder | 215,602.29 |
| **Total Other Current Assets** | 215,602.29 |
| **Total Current Assets** | 305,170.28 |
| **Fixed Assets** | |
| **Corporate Vehicles** | |
| Ford F350 | 54,772.99 |
| Ford Truck F250 (2008) | 6,595.00 |
| **Total Corporate Vehicles** | 61,368.99 |
| Accumulated Depreciation | -65,672.00 |
| Furniture and Equipment | 13,350.00 |
| **Total Fixed Assets** | 9,046.99 |
| **Other Assets** | |
| **Security Deposit** | |
| Utilities | 898.00 |
| **Total Security Deposit** | 898.00 |
| **Worker's Compensation Deposit** | 3,708.08 |
| **Total Other Assets** | 4,606.08 |
| **TOTAL ASSETS** | 318,823.35 |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| Accounts Payable | 222,298.67 |
| **Total Accounts Payable** | 222,298.67 |
| **Other Current Liabilities** | |
| **Notes Payable** | |
| 2013 F350 | 19,529.05 |
| Steve Howes | 35,750.00 |
| Chase - Line of Credit | 4,984.65 |
| Notes Payable - Other | -7,718.43 |
| **Total Notes Payable** | 52,545.27 |
| **Payroll Liabilities** | |
| State | 7,025.62 |
| 941 Federal | -9,904.49 |
| 940 FUTA | 110.37 |
| Vacation | 6,123.75 |
| Union Dues | 347.77 |
| **Payroll Tax Liability 2015** | |
| STATE TAX LIABILITY 2015 | 2,744.79 |
| FEDERAL TAX LIABILITY 2015 | 17,180.06 |
| Payroll Tax Liability 2015 - Other | 435.00 |

EXHIBIT B



**South Coast Concrete, Inc.**
**Balance Sheet**
As of December 31, 2016

11:34 AM
03/27/17
Accrual Basis

|  | Dec 31, 16 |
|---|---|
| Total Payroll Tax Liability 2015 | 20,359.85 |
|  |  |
| Payroll Tax Liability 2014 |  |
| STATE TAX LIABILITY 2014 | -3,877.00 |
| FEDERAL TAX LIABILITY 2014 | 7,465.26 |
|  |  |
| Total Payroll Tax Liability 2014 | 3,588.26 |
|  |  |
| Payroll Tax Liability 2013 Pre |  |
| FEDERAL TAX LIABILITY 2013 PRE | -26,852.07 |
| STATE TAX LIABILITY 2013 PRE | 3,273.48 |
| Payroll Tax Liability 2013 Pre - Other | 135,744.35 |
|  |  |
| Total Payroll Tax Liability 2013 Pre | 112,165.76 |
|  |  |
| Payroll Liabilities - Other | -57,490.44 |
|  |  |
| Total Payroll Liabilities | 84,326.45 |
|  |  |
| Total Other Current Liabilities | 136,871.72 |
|  |  |
| Total Current Liabilities | 359,170.39 |
|  |  |
| Total Liabilities | 359,170.39 |
|  |  |
| Equity |  |
| Capital Stock | 22,612.00 |
| Owner's Equity |  |
| Shareholder Distributions(Draw) |  |
| Karen Howes - Draw | -16,281.23 |
| Dan Howes - Draw | -118,045.00 |
|  |  |
| Total Shareholder Distributions(Draw) | -134,326.23 |
|  |  |
| Total Owner's Equity | -134,326.23 |
|  |  |
| Retained Earnings | -114,535.53 |
| Net Income | 185,902.72 |
|  |  |
| Total Equity | -40,347.04 |
|  |  |
| TOTAL LIABILITIES & EQUITY | 318,823.35 |

**EXHIBIT B**

25

# MELISSA W. COOK & ASSOCIATES
### A PROFESSIONAL CORPORATION
### ATTORNEYS AT LAW

MELISSA W. COOK
JASON J. KENNEDY
ALLISON R. LEMESHEWSKY

LUISA DIAZ TORRES
Paralegal

3444 CAMINO DEL RIO NORTH, SUITE 106
SAN DIEGO, CALIFORNIA 92108

TELEPHONE
(619) 280-4302

FACSIMILE
(619) 280-4304

April 5, 2017

## CERTIFIED MAIL
## RETURN RECEIPT REQUESTED

## VIA ELECTRONIC MAIL

Alex M. Brucker, Esq.
Brucker & Morra, A Professional Corporation
10866 Wilshire Boulevard, 10th Floor
Los Angeles, California 90024

      Re:   San Diego County Cement Masons Pension Trust Fund;
              South Coast Concrete, Inc. - Employer Request for Review

Dear Mr. Brucker:

Please be advised that this law firm represents the San Diego County Cement Masons Pension Trust Fund (the "Plan"). This letter is in response to your letter dated March 29, 2017, that purported to be a formal Request for Review of the withdrawal liability assessed against your client South Coast Concrete, Inc. ("South Coast"), by the Plan.

Your client's Request for Review raised two concerns which I will address in turn.

**First**, the Request for Review argued that South Coast should not be considered to have withdrawn from the Plan because it was action by Cement Masons Local No. 500 which precipitated the withdrawal.

However, pursuant to ERISA Section 4203, "a complete withdrawal from a multiemployer plan occurs when an employer . . . permanently ceases to have an obligation to contribute under the plan, or . . . permanently ceases all covered operations under the plan."

**EXHIBIT C**

26

MELISSA W. COOK & ASSOCIⒸES
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Alex M. Brucker, Esq.
April 5, 2017
Page 2

Therefore, pursuant to the plain language of ERISA, the proper analysis is not whether South Coast "withdrew from the fund [or] the Fund withdrew from South Coast" (as you propose in your letter). Instead, the operative analysis that must be made is whether South Coast ceased to have an obligation to contribution to the Plan. As the Request for Review itself points out, the answer to that question is yes. Therefore, a complete withdrawal did occur, and the Plan properly assessed withdrawal liability against your client.

Several courts have held that when a plan expels an employer from participation in the plan, that action can constitute a complete withdrawal for withdrawal liability purposes. *See Fort Transfer Co. v. Cent. States, Southeast and Southwest Areas Pension Fund*, 2007 U.S. Dist. LEXIS 15653, 8-9 (N.D. Ill. Mar. 2, 2007), and *Borntrager v. Cent. States, Southeast & Southwest Areas Pension Fund*, 2003 U.S. Dist. LEXIS 11653 (N.D. Iowa July 2, 2003).

It is important to point out that these cases involve a situation where the plan itself expelled an employer from participation in the plan. That did not occur here. Here, one of the bargaining parties, Local No. 500, precipitated South Coast's withdrawal. As you know, the Plan is a separate legal entity from the Local Union, and the Plan is not legally responsible for the acts of the Local Union.

The assessment of withdrawal liability under the instant facts is also supported by PBGC Opinion Letter No. 86-7 where the PBGC supported the imposition of withdrawal liability against an employer when that employer ceased making contributions to the plan following a union decertification. The PBGC stated, "Section 4203(a) thus makes no distinctions based on the causes of a cessation of an employer's obligation to contribute under a plan." Again, the inquiry is only whether there was a cessation, and no analysis need be made regarding the causes of the cessation.

**Second**, the Request for Review argued that South Coast should qualify for a reduction in the assessed withdrawal liability pursuant to ERISA Section 4225.

EXHIBIT C

MELISSA W. COOK & ASSOC⬭ES
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Alex M. Brucker, Esq.
April 5, 2017
Page 3

ERISA Section 4225 states, "In the case of an insolvent employer <u>undergoing liquidation or dissolution</u>, the unfunded vested benefits allocable to that employer shall [be subject to reduction.]" (Emphasis added.) Here, there is no evidence to show that South Coast, is "undergoing liquidation or dissolution" and there is evidence to show that South Coast continues to be a going concern. Therefore, although the Request for Review alleges that South Coast is insolvent, Section 4225 does not apply because South Coast continues to be a going concern.

This analysis is supported by a reading of *Trustees of Amalgamated Ins. Fund v. Geltman Industries, Inc.*, 784 F.2d 926 (9th Cir. Cal. 1986), although this particular issue was not litigated in that case. In *Amalgamated*, the employer ceased business operations and negotiated a sale of its assets. Here, South Coast has not ceased business operations, and therefore does not qualify under Section 4225.

Please consider this letter the Plan's decision pursuant to ERISA Section 4219(b)(3)(B). Based on the reasoning above, the Plan has determined that no change need be made regarding the assessment of withdrawal liability against South Coast.

Please do not hesitate to contact our office with any questions or concerns. I personally can be reached at the address above or my email Jason@MWCandAssociates.com.

Very truly yours,

MELISSA W. COOK & ASSOCIATES

Jason J. Kennedy

JJK/ldt/Brudker.ltr.wpd
0356.95
cc: Mr. Jonathan Hassan (Via Electronic Mail)
    Mr. Steven Crummy (Via Electronic Mail)

EXHIBIT C

28

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

**OFFICIAL USE**

| | |
|---|---|
| Certified Mail Fee | 3.35 |
| $ | |
| Extra Services & Fees (check box, add fee as appropriate) | |
| ☐ Return Receipt (hardcopy) | $ 1.75 |
| ☐ Return Receipt (electronic) | $ |
| ☐ Certified Mail Restricted Delivery | $ |
| ☐ Adult Signature Required | $ |
| ☐ Adult Signature Restricted Delivery | $ |
| Postage | $ .46 |
| $ | |
| Total Postage and Fees | $ 6.56 |
| $ | |

Postmark
Here

4/5/17

Sent To    Alex M. Brucker, Esq.

Street and Apt. No., or PO Box   Brucker & Morra

10866 Wilshire Boulevard, 10th Floor

City, State, ZIP+4®   Los Angeles, California 90024

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7015 0640 0003 2144 5033

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

1. Article Addressed to:

Alex M. Brucker, Esq.
Brucker & Morra
10866 Wilshire Boulevard, 10th Floor
Los Angeles, California 90024

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    ☐ Agent
                        ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
JULY CARDOZA

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

9590 9401 0179 5234 8881 63

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted
   Delivery
☒ Return Receipt for
   Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation
   Restricted Delivery

2. Article Number (Transfer from service label)
7015 0640 0003 2144 5033

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

**EXHIBIT C**

29



ALEX M. BRUCKER
MEREDITH J. SESSER *

MARIA LAGMAN-MAPOY
LEGAL ASSISTANT

**BRUCKER & MORRA**

* A PROFESSIONAL CORPORATION

Leaders in ERISA and Benefits Law

LINDA RUSSANO MORRA
(RETIRED)

May 18, 2017

**VIA EMAIL AND CERTIFIED MAIL,
RETURN RECEIPT REQUESTED**

Mr. Jason J. Kennedy
Melissa w. Cook & Associates, A Professional Corporation
3444 Camino del Rio South, Suite 108
San Diego, CA 92108

Re:   South Coast Concrete, Inc.
      Employer Withdrawal Liability Notice and Demand for Payment from San Diego
      Cement Masons Trust Funds

Dear Mr. Kennedy:

We acknowledge your letter dated April 5, 2017 (copy attached) in response to our Client, South Coast Concrete, Inc. ("South Coast"), in connection with the assessment of alleged withdrawal liability from the San Diego Cement Masons Trust Funds (the "Fund").

In our letter to the Fund of March 29, 2017, we expressed that "South Coast did not take any action and had no intention to withdraw from the Fund and its obligations to the Fund". In fact, the Cement Masons Local No. 500 caused its members not to accept employment with South Coast, thereby forcing South Coast to operate without Cement Masons Union employees. South Coast did not withdraw from the Fund, the Fund withdrew from South Coast.

South Coast is a small business company in the construction industry. South Coast desires to continue to conduct construction business in the San Diego local. To secure contracts with customers, it must employ seasoned and experienced construction workers. Because of the Fund's withdrawal from South Coast, it has had to secure employees from other sources. As you are aware, the market for construction contracts suffered greatly recently and is attempting a recovery. This places a larger burden on small businesses in the construction industry.

The withdrawal liability demand by the Fund would effectively force South Coast out of business which would not be in the best interest of the Fund or its members or my Client. Accordingly, my Client respectfully requests to make amends and to continue to



**BRUCKER & MORRA**
A PROFESSIONAL CORPORATION

Mr. Jason J. Kennedy
Melissa w. Cook & Associates, APC
May 18, 2017
Page 2

employ members of the Cement Masons Unions for its prospective construction contracts. South Coast would agree to abide by the terms of its collective bargaining agreement and the Fund. South Coast will pay all contribution requirements promptly. To assure the Fund of this understanding, South Coast would agree to secure timely payment of future covered employment contribution obligations by granting the Fund a right to withdraw the exact amount of contributions obligations due directly from the its bank account upon 30-days after receipt of the Fund's notice to South Coast of delayed payment and limited to the amount of late contribution due.

South Coast believes with a recovering construction market in its local, it should be able to obtain future contracts and satisfy its obligations.

As we previously noted, South Coast currently has liabilities in excess of its assets. The additional obligation of the Fund's withdrawal liability demand would render South Coast financially insolvent and unable to attract future construction contracts.

We appreciate your review of this proposal and anticipate a positive response to this proposal from the Fund.

Please let me know if any additional information is needed.

Very truly yours,

Alex M. Brucker

/Encls.
S/docs M-Z/sout8/KennedyletterFinal

EXHIBIT D                                                                      31

**MELISSA W. COOK & ASSOCIATES**
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
8444 CAMINO DEL RIO NORTH, SUITE 108
SAN DIEGO, CALIFORNIA 92108

MELISSA W. COOK
JASON J. KENNEDY
ALLISON R. LEMESHEWSKY

LUISA DIAZ TORRES
Paralegal

TELEPHONE
(619) 280-4302

FACSIMILE
(619) 280-4304

April 5, 2017

<u>**CERTIFIED MAIL**</u>
<u>**RETURN RECEIPT REQUESTED**</u>

<u>**VIA ELECTRONIC MAIL**</u>

Alex M. Brucker, Esq.
Brucker & Morra, A Professional Corporation
10866 Wilshire Boulevard, 10th Floor
Los Angeles, California 90024

Re:    San Diego County Cement Masons Pension Trust Fund;
      <u>South Coast Concrete, Inc. - Employer Request for Review</u>

Dear Mr. Brucker:

Please be advised that this law firm represents the San Diego County Cement Masons Pension Trust Fund (the "Plan"). This letter is in response to your letter dated March 29, 2017, that purported to be a formal Request for Review of the withdrawal liability assessed against your client South Coast Concrete, Inc. ("South Coast"), by the Plan.

Your client's Request for Review raised two concerns which I will address in turn.

First, the Request for Review argued that South Coast should not be considered to have withdrawn from the Plan because it was action by Cement Masons Local No. 500 which precipitated the withdrawal.

However, pursuant to ERISA Section 4203, "a complete withdrawal from a multiemployer plan occurs when an employer . . . permanently ceases to have an obligation to contribute under the plan, or . . . permanently ceases all covered operations under the plan."

EXHIBIT D

**MELISSA W. COOK & ASSOCIES**
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Alex M. Brucker, Esq.
April 5, 2017
Page 2

Therefore, pursuant to the plain language of ERISA, the proper analysis is not whether South Coast "withdrew from the fund [or] the Fund withdrew from South Coast" (as you propose in your letter). Instead, the operative analysis that must be made is whether South Coast ceased to have an obligation to contribution to the Plan. As the Request for Review itself points out, the answer to that question is yes. Therefore, a complete withdrawal did occur, and the Plan properly assessed withdrawal liability against your client.

Several courts have held that when a plan expels an employer from participation in the plan, that action can constitute a complete withdrawal for withdrawal liability purposes. *See Fort Transfer Co. v. Cent. States, Southeast and Southwest Areas Pension Fund*, 2007 U.S. Dist. LEXIS 15653, 8-9 (N.D. Ill. Mar. 2, 2007), and *Borntrager v. Cent. States, Southeast & Southwest Areas Pension Fund*, 2003 U.S. Dist. LEXIS 11653 (N.D. Iowa July 2, 2003).

It is important to point out that these cases involve a situation where the plan itself expelled an employer from participation in the plan. That did not occur here. Here, one of the bargaining parties, Local No. 500, precipitated South Coast's withdrawal. As you know, the Plan is a separate legal entity from the Local Union, and the Plan is not legally responsible for the acts of the Local Union.

The assessment of withdrawal liability under the instant facts is also supported by PBGC Opinion Letter No. 86-7 where the PBGC supported the imposition of withdrawal liability against an employer when that employer ceased making contributions to the plan following a union decertification. The PBGC stated, "Section 4203(a) thus makes no distinctions based on the causes of a cessation of an employer's obligation to contribute under a plan." Again, the inquiry is only whether there was a cessation, and no analysis need be made regarding the causes of the cessation.

**Second**, the Request for Review argued that South Coast should qualify for a reduction in the assessed withdrawal liability pursuant to ERISA Section 4225.

**MELISSA W. COOK & ASSOCIATES**
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Alex M. Brucker, Esq.
April 5, 2017
Page 3

ERISA Section 4225 states, "In the case of an insolvent employer undergoing liquidation or dissolution, the unfunded vested benefits allocable to that employer shall [be subject to reduction.]" (Emphasis added.)   Here, there is no evidence to show that South Coast, is "undergoing liquidation or dissolution" and there is evidence to show that South Coast continues to be a going concern.   Therefore, although the Request for Review alleges that South Coast is insolvent, Section 4225 does not apply because South Coast continues to be a going concern.

This analysis is supported by a reading of *Trustees of Amalgamated Ins. Fund v. Geltman Industries, Inc.*, 784 F.2d 926 (9th Cir. Cal. 1986), although this particular issue was not litigated in that case.   In *Amalgamated*, the employer ceased business operations and negotiated a sale of its assets.   Here, South Coast has not ceased business operations, and therefore does not qualify under Section 4225.

Please consider this letter the Plan's decision pursuant to ERISA Section 4219(b)(3)(B).   Based on the reasoning above, the Plan has determined that no change need be made regarding the assessment of withdrawal liability against South Coast.

Please do not hesitate to contact our office with any questions or concerns.   I personally can be reached at the address above or my email Jason@MWCandAssociates.com.

Very truly yours,

MELISSA W. COOK & ASSOCIATES

Jason J. Kennedy

JJK/ldt/Brucker.ltr.wpd
0356.95
cc: Mr. Jonathan Hassan (Via Electronic Mail)
    Mr. Steven Crummy (Via Electronic Mail)

EXHIBIT D

34

## MELISSA W. COOK & ASSOCIATES
### A PROFESSIONAL CORPORATION
### ATTORNEYS AT LAW
3444 CAMINO DEL RIO NORTH, SUITE 106
SAN DIEGO, CALIFORNIA 92108

MELISSA W. COOK
JASON J. KENNEDY
ALLISON R. LEMESHEWSKY

LUISA DIAZ TORRES
Paralegal

TELEPHONE
(619) 280-4302

FACSIMILE
(619) 280-4304

June 26, 2017

**VIA U.S. MAIL AND ELECTRONIC MAIL**
Mlagman@pensionlawyers.com

Alex M. Brucker, Esq.
Brucker & Morra, A Professional Corporation
10866 Wilshire Boulevard, 10th Floor
Los Angeles, California 90024

> Re:    San Diego County Cement Masons Pension Trust Fund;
>         South Coast Concrete, Inc. - Employer Request for Review

Dear Mr. Brucker:

As you know from prior correspondence, this law firm represents the San Diego County Cement Masons Pension Trust Fund (the "Plan"). This letter is in response to your letter dated May 18, 2017, regarding the withdrawal liability assessed against your client South Coast Concrete, Inc. ("South Coast").

In your letter, you essentially request that the withdrawal liability assessed against South Coast be abated. Pursuant to 29 C.F.R. 4207.3 (a), "Whenever an eligible employer that has completely withdrawn from a multiemployer plan reenters the plan, it may apply to the plan for abatement of its complete withdrawal liability."

Obviously, this language requires that your client reenter the plan in order to be eligible for abatement. As we have previously discussed, Cement Masons Local 500 has previously caused your client to cease having an obligation to contribute to the Plan. Therefore, the decision to reinstate your client's obligation lies with Local 500. Our office has discussed this matter with Local 500, and they will be in contact with your client to determine if it is possible to move forward in this fashion. This is a decision that belongs to the Local, not the Plan.

In the interim, the Plan has decided to postpone your client's deadline to initiate arbitration, as it relates to the assessment of withdrawal liability against South

**EXHIBIT E**



**MELISSA W. COOK & ASSOCIATES**
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Alex M. Brucker, Esq.
June 26, 2017
Page 2

Coast, until September 30, 2017. Hopefully this will give your client and Local 500 an opportunity to discuss this matter and come to an arrangement, if such an arrangement is agreeable to all parties.

If you would like Local 500 to contact your office instead of your client directly, please let me know, and I will direct them to do so. However, I would make clear that my office does not legally represent Local 500 in any way.

However, I would like to point out one matter that could potentially cause problems in implementing any such agreement. As you might or might not know, South Coast is currently making payment on a Payment Plan with the Pension Fund in which it is repaying contributions that it had previously failed to pay. Attached find the payment schedule from that Payment Plan. **As you can see from the hand written notes on the side, your client has paid through March 15, 2017, and is currently delinquent in its payments that were due on April 15, May 15, and June 15, 2017, for a total of $4,500.00.**

**Unless your client becomes current on the Agreement, there is no way for the parties to agree to any other arrangements with your client.**

Please do not hesitate to contact our office with any questions or concerns. I personally can be reached at the address above or my email Jason@MWCandAssociates.com.

Very truly yours,

MELISSA W. COOK & ASSOCIATES

Jason J. Kennedy

JJK/ldt/Brucker.ltr.wpd
0356.95
Enclosure
cc: Steve Crummy w/Enclosure (Via Electronic Mail)

**EXHIBIT E**

36



## MELISSA W. COOK & ASSOCIATES

A PROFESSIONAL CORPORATION

**ATTORNEYS AT LAW**

MELISSA W. COOK
JASON J. KENNEDY
ALLISON R. LEMESHEWSKY

3444 CAMINO DEL RIO NORTH, SUITE 106
SAN DIEGO, CALIFORNIA 92108

TELEPHONE
(619) 280-4302

FACSIMILE
(619) 280-4304

LUISA DIAZ TORRES
Paralegal

September 13, 2017

**VIA ELECTRONIC MAIL AND U.S. MAIL**
mlagman@pensionlawyers.com

Alex M. Brucker, Esq.
Brucker & Morra, A Professional Corporation
10866 Wilshire Boulevard, 10th Floor
Los Angeles, California 90024

Re:   San Diego County Cement Masons Pension Trust Fund;
      South Coast Concrete, Inc. - Abatement of Withdrawal Liability

Dear Mr. Brucker:

As you know from prior correspondence, this law firm represents the San Diego County Cement Masons Pension Trust Fund (the "Trust Fund"). This letter is a follow up to my letter dated June 26, 2017, regarding the withdrawal liability assessed against your client South Coast Concrete, Inc. ("South Coast").

In the June 26 letter, I discuss the possibility that your client be allowed to "abate" its withdrawal liability pursuant to 29 C.F.R. 4207.3 (a). As I explained in that letter, before such abatement could proceed, Local 500 was required to allow your client to re-sign the relevant collective bargaining agreement. I have been informed by Local 500 that the Local is amenable to South Coast re-signing.

Therefore, upon re-signing the relevant CBA, South Coast may apply for Abatement pursuant to 29 C.F.R. 4207.3 et seq.

EXHIBIT E

38



MELISSA W. COOK & ASSOCIATES
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Alex M. Brucker, Esq.
September 13, 2017
Page 2

Particularly, the following requirements would apply:

- 4207.3 (a):  Whenever an eligible employer that has completely withdrawn from a multiemployer plan reenters the plan, it may apply to the plan for abatement of its complete withdrawal liability. <u>Applications shall be filed by the date of the first scheduled withdrawal liability payment falling due after the employer resumes covered operations or, if later, the fifteenth calendar day after the employer resumes covered operations</u>. Applications shall identify the eligible employer, the withdrawn employer, if different, the date of withdrawal, and the date of resumption of covered operations. (Emphasis added.)

- 4207 (b):  As soon as practicable after an eligible employer that completely withdrew from a multiemployer plan applies for abatement, the plan sponsor shall determine whether the employer satisfies the requirements for abatement of its complete withdrawal liability under this part and shall notify the employer in writing of its determination and of the consequences of its determination, as described in paragraphs (c) or (d) and (e) of this section, as appropriate. If a bond or escrow has been provided to the plan under § 4207.4, the plan sponsor shall send a copy of the notice to the bonding or escrow agent.

- 4207.1 (a):  An eligible employer that completely withdraws from a multiemployer plan and subsequently reenters the plan may, <u>in lieu of making withdrawal liability payments due after its reentry, provide a bond to, or establish an escrow account for, the plan that satisfies the requirements of paragraph (b) of this section or any plan rules adopted under paragraph (d) of this section, pending a determination by the plan sponsor under § 4207.3(b) of whether the employer satisfies the requirements for abatement of its complete withdrawal liability</u>. (Emphasis added.)



MELISSA W. COOK & ASSOCIATES
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Alex M. Brucker, Esq.
September 13, 2017
Page 3

- 4207.5 (a): an eligible employer that completely withdraws from a multiemployer plan and subsequently reenters the plan shall have its liability for that withdrawal abated in accordance with § 4207.3(c) <u>if the employer resumes covered operations under the plan, and the number of contribution base units with respect to which the employer has an obligation to contribute under the plan for the measurement period (as defined in paragraph (b) of this section) after it resumes covered operations exceeds 30 percent of the number of contribution base units with respect to which the employer had an obligation to contribute under the plan for the base year</u> (as defined in paragraph (c) of this section). (Emphasis added.)

- 4207.5 (b): If the employer resumes covered operations under the plan at least six full months prior to the end of a plan year and would satisfy the test in paragraph (a) based on its contribution base units for that plan year, then the measurement period shall be the period from the date it resumes covered operations until the end of that plan year. If the employer would not satisfy this test, or if the employer resumes covered operations under the plan less than six full months prior to the end of the plan year, the measurement period shall be the first twelve months after it resumes covered operations.

- 4207.5 (c): For purposes of paragraph (a) of this section, the employer's number of contribution base units for the base year is the average number of contribution base units for the two plan years in which its contribution base units were the highest, within the five plan years immediately preceding the year of its complete withdrawal.

Taking all of this into account, three important issues arise:

<u>First</u>, South Coast is still required to make any withdrawal liability payment that became due from the date the withdrawal liability was assessed until South Coast makes an application for abatement. Here, the first quarterly payment of $24,497.00

EXHIBIT E

40



MELISSA W. COOK & ASSOCIATES
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Alex M. Brucker, Esq.
September 13, 2017
Page 4

became due on March 7, 2017, and still must be paid. Additionally, another payment is due every three months thereafter.

$\underline{Second}$, withdrawal liability payments that come due during the measurement period also remain due, unless South Coast obtains a bond pursuant to 4207.1 (a). It is required that South Coast obtain such a bond or continue to make withdrawal liability payments.

$\underline{Third}$, South Coast must meet the 30 percent test laid out in 4207.5 (a). It is imperative that your client meet all of these requirements.

As a final matter, I would like to raise the issue of delinquent payments pursuant to the existing Payment Plan. As you know, South Coast is currently making payment on a Payment Plan with the Pension Fund in which it is repaying contributions that it had previously failed to pay. **Your client has paid through March 15, 2017, and is currently delinquent in its payments that were due on April 15, May 15, June 15, July 15, and August 15, 2017 for a total of $7,500.00.**

Unless your client becomes current on the Agreement, there is no way for the parties to agree to any other arrangements with your client. **In fact, unless the delinquent payments, totaling $7,500.00 are paid within fifteen (15) days of the date of this letter, or by September 28, 2017, it will be necessary for the Trust Fund to initiate legal action in this regard.**

EXHIBIT E

41



**MELISSA W. COOK & ASSOCIATES**
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Alex M. Brucker, Esq.
September 13, 2017
Page 5

    Please do not hesitate to contact our office with any questions or concerns.  I personally can be reached at the address above or my email Jason@MWCandAssociates.com.

                Very truly yours,

                MELISSA W. COOK & ASSOCIATES

                Jason J. Kennedy

JJK/ldt/Brucker2.ltr.wpd
0356.95
cc: Mr. Steve Crummy (Via Electronic Mail)
    Mr. Jonathan Hassen (Via Electronic Mail)
    Mr. Jack Alvarado (Via Electronic Mail)

# MELISSA W. COOK & ASSOCIATES
### A PROFESSIONAL CORPORATION
### ATTORNEYS AT LAW
3444 CAMINO DEL RIO NORTH, SUITE 106
## SAN DIEGO, CALIFORNIA 92108

MELISSA W. COOK
JASON J. KENNEDY
ALLISON R. LEMESHEWSKY

LUISA DIAZ TORRES
Paralegal

TELEPHONE
(619) 280-4302

FACSIMILE
(619) 280-4304

## November 22, 2017

**VIA ELECTRONIC MAIL AND U.S. MAIL**
mlagman@pensionlawyers.com

Alex M. Brucker, Esq.
Brucker & Morra, A Professional Corporation
10866 Wilshire Boulevard, 10th Floor
Los Angeles, California 90024

> Re:   San Diego County Cement Masons Pension Trust Fund;
>        South Coast Concrete, Inc. - Abatement of Withdrawal Liability

Dear Mr. Brucker:

As you know from prior correspondence, this law firm represents the San Diego County Cement Masons Pension Trust Fund (the "Plan"). This letter is a follow up to my letter dated September 13, 2017, regarding the withdrawal liability assessed against your client South Coast Concrete, Inc. ("South Coast").

We had previously discussed your client resolving the delinquent payments on the existing payment agreement. The Plan received two checks, in the amounts of $2,000.00 and $5,500.00 from your client in an attempt to resolve the delinquency. Thereafter, our office was made aware that the check for $5,500.00 was returned for insufficient funds. **For this reason, a decision has been made by Local 500 that your client, South Coast, should not be allowed to re-sign a bargaining agreement in order to abate the assessed withdrawal liability.**

Therefore, this letter shall serve as a notice of default pursuant to Section 4219(c)(5) of the Employee Retirement Income Security Act of 1964 ("ERISA"), 29 U.S.C. Section 1399(c)(5).

EXHIBIT F

43

MELISSA W. COOK & ASSOCIATES
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Alex M. Brucker, Esq.
November 22, 2017
Page 2

South Coast's withdrawal liability payments due to the San Diego County Cement Masons Pension Plan are overdue and will be considered in "default" if they are not brought current within sixty (60) days of this notice.

On January 6, 2017, the San Diego County Cement Masons Trust Funds provided notice of assessment of withdrawal liability by letter. This letter laid out the schedule of payments that are to be made by South Coast regarding the assessment of withdrawal liability. A copy of said letter has been enclosed for your review.

South Coast is in default of ERISA Section 4219 because it has failed to make its first quarterly payment in the amount of $24,497.00, which was due on March 7, 2017. Additionally, a second and third quarterly payment have come due on or around June 7, 2017, and September 7, 2017, respectively.

Therefore, **please submit prompt payment in the amount of $73,491.00 by January 21, 2018** to:

> San Diego County Cement Masons Trust Funds
> 3737 Camino del Rio South, Suite 300
> San Diego, California 92108

If no payment is received, the Fund may require immediate payment of the entire amount of the outstanding liability, plus accrued interest.

Additionally, please consider this Notice of Default under the existing Payment Plan dated September 19, 2017. As you know, South Coast is currently making payment on a Payment Plan with the Pension Fund in which it is repaying contributions that it had previously failed to pay. **Your client has paid through April 15, 2017, and is currently delinquent in its payments that were due on May 15 (shortage of $500.00), and June 15 ($1,500.00), July 15 ($1,500.00), and August 15 ($1,500.00), September 15 ($1,500.00), October 15 ($2,000.00), and November 15, 2017 ($2,000.00) for a total of $10,500.00.**

MELISSA W. COOK & ASSOCIATES
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Alex M. Brucker, Esq.
November 22, 2017
Page 3

Unless the delinquent payments, totaling $10,500.00 are paid within fifteen (15) days of the date of this letter, or by December 7, 2017, it will be necessary for the Trust Fund to initiate legal action in this regard pursuant to the terms of the Payment Agreement.

Please do not hesitate to contact our office with any questions or concerns. I personally can be reached at the address above or my email Jason@MWCandAssociates.com.

Very truly yours,

MELISSA W. COOK & ASSOCIATES

Jason J. Kennedy

JJK/ldt/Brucker3.ltr.wpd
0356.95
Enclosure
cc: Mr. Steve Crummy w/Enclosure (Via Electronic Mail)
    Mr. Jonathan Hassen w/Enclosure (Via Electronic Mail)

# SAN DIEGO COUNTY CEMENT MASONS TRUST FUNDS

January 6, 2016

Southcoast Concrete
5111 Santa Fe St – Suite G
San Diego, CA 92109

Re:     San Diego County Cement Masons Pension Plan
        Notification and Demand for Payment of Employer Withdrawal Liability

Dear Sirs:

Our records indicate that the Employer has ceased to have an obligation to contribute to the Pension Plan, and has continued to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions to the plan were previously required. This letter provides you with notice of the amount of the Employer's withdrawal liability pursuant to ERISA Section 4219 (29 U.S.C. § 1399) and makes a demand for payment as specified below.   An employer who withdraws from the San Diego County Cement Masons Pension Plan (the "Plan") is generally liable to the Trust for a share of the Plan's unfunded vested benefits, as determined under the withdrawal liability rules adopted by the Trustees of the Trust pursuant to the Multiemployer Pension Plan Amendments Act of 1980.

**Withdrawal Liability Calculation and Payment:**

Under ERISA Section 4219(c), the Employer is required to pay withdrawal liability in quarterly installment payments over a period of years necessary to fully amortize the liability, but for no longer than a 20-year period.  The Employer's total withdrawal liability was determined to be $503,575.  Additional information concerning the Employer's withdrawal liability amount and the corresponding payment schedule is enclosed.  The Employer may either pay its withdrawal liability payments quarterly or prepay the total amount due.

If paid quarterly, twenty-four payments of $24,497 followed by a final payment of $14,104 would be due. This quarterly payment was calculated by determining the average of your highest consecutive 3-year annual number of contribution base units ("hours") during the prior 10 Plan years, multiplied by the highest contribution rate at which you had an obligation to contribute under the Plan during the prior 10 Plan years, including the Plan year in which you withdrew[1]. This figure was subsequently divided by four to determine the applicable quarterly amount. The details supporting this calculation are provided in the attached letter from the Plan's actuary.

The withdrawal liability amounts apply only if the withdrawal is not part of a mass withdrawal. In the event of a mass withdrawal, the liability amount could be significantly larger and the withdrawal liability payments will continue beyond the 20-year maximum provided for under ERISA Section 4219(c)(1)(B).

---

[1] If earlier, reflecting the last Plan Year for which contributions were made to the Fund.

3737 Camino del Rio South, Suite 300 • San Diego, CA 92108
Phone 619-8⁴⁰ ¹⁰⁶⁰ · F⁻ ⁽619) 632-5682
www.sdcementbene  **EXHIBIT F**  sdcementbenefits.org

46

# SAN DIEGO COUNTY CEMENT MASONS TRUST FUNDS

The first quarterly payment, or the total annual amount if you choose to prepay, is due no later than 60 days after receipt of this letter, as required by ERISA Section 4219(c)(2); 29 U.S.C. § 1399(c)(2). If you choose to pay quarterly, the first payment of $24,497 would be due by March 7, 2017. After receipt of the first quarterly payment, you will be sent a further notification regarding your schedule of quarterly payments if you choose this payment option.

Payments by check should be made payable to the "San Diego County Cement Masons Pension Plan" and mailed to the Administrative Office of the Trust at:

San Diego County Cement Masons Pension Plan
c/o BeneSys, Inc.
3737 Camino Del Rio South, Suite 300
San Diego, CA 92108

No later than 90 days after you receive this Notice, you may request in writing that the Trust review any specific item relating to the determination of the Employer's withdrawal liability or of the schedule of its quarterly installment payments. During this period, you may also identify in writing any errors in the determination of the Employer's allocable share of the Plan's unfunded vested benefits and may furnish the Trust with additional relevant information. However, the Employer is still required to make payments on schedule during the pendency of any appeal. A request for review should be sent to the Administrative Office of the Trust at the same address listed above. If you file a timely request for review with the Trust, the Trust, after a review of any matter raised, will notify you in writing of its decision, the basis for the decision, and the reasons for any change in the Employer's withdrawal liability or schedule of quarterly installment payments.

We recommend that you consult with your own advisors regarding the Employer's withdrawal liability, as well as its potential membership in any controlled group of corporations. If you have any questions about this matter, please contact me at the Plan's administrative office at (619) 849-1051.

Very truly yours,


Steven Crummy
Plan Administrator

cc:    Melissa Cook, Esq.
       Jonathan Hassen
       Sheri Gordon

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by **SOUTH COAST CONCRETE, INC.** ("Defendant" or "Employer"), located at 5111 Santa Fe Street, Suite G, San Diego, California 92109, and **DAN HOWES**, the principal shareholder, member, officer, and/or owner of the Company ("Owner"), in regards to unpaid contributions for employee benefits owed to the **SAN DIEGO COUNTY CEMENT MASONS PENSION TRUST FUND** and related employee benefit plans and funds ("Plaintiff"). Together the foregoing are identified herein as the "Parties."

## I.
## GENERAL RECITALS

This Agreement is made for the following purpose and with reference to the following facts:

1.1    On or about April 24, 2015, Plaintiff filed its Complaint for breach of written collective bargaining agreement and related trust agreements, violation of Section 515 of ERISA, and order for audit, entitled *Board of Trustees of the San Diego Cement Masons Pension Trust Fund v. South Coast Concrete, Inc., a California corporation*, Case Number 2:15-cv-05738 SJO (GJSx).

1.2    Plaintiff alleged in its Complaint that the Pension Fund is authorized by the respective Boards of Trustees of the Pension Fund, San Diego County Cement Masons' Health and Welfare Trust, San Diego Construction Advancement Fund, the Cement Masons' Southern California Apprenticeship Trust, and the San Diego County Cement Masons' Trust (collectively "Trust Funds") to receive and collect contributions on behalf of the Trust Funds. The Pension Fund is also authorized to receive and collect contributions for San Diego County Cement Masons Vacation Plan.

1.3    Plaintiff alleged in its Complaint that Defendant is signatory to and bound by an the ECA Master Labor Agreement for Engineering Construction ("CBA") between the Engineering Contractors' Association and the Operative Plasterers' & Cement Masons' International Association Local No. 500/Area 744. The CBA incorporates the terms and conditions of the Declarations of Trust for each of the relevant Trust Funds ("Trust Agreements"), and also binds Defendant to the terms and

ARL/ldt/0356.26.Settlement.Agreement.wpd
09/16/16

**EXHIBIT G**                                                                    48

conditions of the Vacation Plan. Together the CBA, Trust Agreements and Vacation Plan are collectively referred to herein as the "Agreements."

1.4    Plaintiff alleged in its Complaint that Defendant was required to pay to the Trust Funds certain sums per hour for each hour paid and/or worked during each month by cement masons employed by Defendant ("Contributions").

1.5    Plaintiff alleged that during the months of June 2014 through at least March 2015, Defendant employed persons who performed work covered by the Agreements and failed to pay fringe benefit contributions as required by the Agreements.

1.6    On or about November 5, 2015, the Clerk entered Default Judgment against Defendant in the total amount of $106,760.63, which sum represents $63,984.04 for unpaid contributions, $3,014.36 for interest on the unpaid contributions, $5,907.39 for liquidated damages, $24,018.89 for breach of contract, $9,350.00 for attorney's fees, and $485.95 for costs.

1.7    The Parties now desire and intend to resolve this matter as between them and wish to put the terms of settlement in writing.

## II.
## AGREEMENT

Now, therefore, in consideration of the mutual promises, agreements, and understandings contained herein, and other good and valuable consideration, the receipt of which is acknowledged, the Parties covenant, promise and agree as follows:

2.1    Payment.  Employer and Owner stipulate and agree to pay to the Trust Fund in the total amount of **$106,760.63** (referred herein as the "Settlement Sum").

2.2    Inability to Pay Immediately.  Employer and Owner represent that at this time they are not financially able to pay the full Settlement Sum specified in paragraph 2.1. Employer and Owner have requested the Trust Funds not to pursue post-judgment remedies for the collection of the full Settlement Sum specified in paragraph 2.1. Employer and Owner understand that so long as it complies with all of the terms of this Agreement, the Trust Fund will abstain from taking action to enforce the outstanding Judgment.

Page 2 of 7

EXHIBIT G

2.3    Terms of Payment. Employer and the Owner jointly and severally, agree and promise to pay to the Trust Funds the amount specified in Paragraph 2.1 as the Settlement Sum, with additional interest amortized on the amount at the rate of ten percent (10%) per annum until paid in full. Employer and Owner agree to make the following payments:

(a)    one single lump sum payment of **$5,000.00** by certified check made payable to "San Diego Cement Masons Pension Trust Fund" to be delivered within five (5) days of the full execution of this Agreement.

(b)    six payments of **$1,000.00** beginning October 15, 2016, and on the fifteenth (15th) of each month through March 15, 2017;

(c)    six payments of **$1,500.00** beginning April 15, 2017, and on the fifteenth (15th) of each month through September 15, 2017;

(d)    six payments of **$2,000.00** beginning October 15, 2017, and on the fifteenth (15th) of each month through March 15, 2018;

(e)    six payments of **$2,500.00** beginning April 15, 2018 and on the fifteenth (15th) of each month through September 15, 2018;

(f)    six payments of **$3,000.00** beginning October 15, 2018, and on the fifteenth (15th) of each month through March 15, 2019;

(g)    six payments of **$3,500.00** beginning April 15, 2019, and on the fifteenth (15th) of each month through September 15, 2019;

(h)    six payments of **$4,000.00** beginning October 15, 2019, and on the fifteenth (15th) of each month through March 15, 2020;

(i)    five payments of **$4,500.00** beginning April 15, 2020, and on the fifteenth (15th) of each month August 15, 2020;

(j)    final payment in the amount of **$3,550.65** due September 15, 2020, and in accordance with the payment schedule attached hereto as Exhibit "A."

Page 3 of 7

2.4 <u>Acceleration in the Event of Default</u>. If Employer and/or Owner fail to timely comply with any of their obligations as set forth in this Agreement ("Default"), then, at the option and within the sole discretion of the Trust Funds, the entire balance of the Settlement Sum amount specified in Paragraph 2.1, plus accrued interest thereon, and minus any payments made, shall immediately become due and payable in full without notice. Upon written notice of Default to Employer by the Trust Funds, Employer shall have five (5) days in which to cure the Default by delivering a cashier's check to the address below:

> San Diego County Cement Masons Trust Fund
> c/o Melissa W. Cook & Associates
> 3444 Camino del Rio North, Suite 106
> San Diego, California 92108

Should Employer and/or Owner fail to cure the Default, the Trust Funds may thereafter immediately pursue all available post-judgment enforcement remedies for the collection and payment of the full amount that remains due and owing on this Agreement, along with interest assessed thereon, and all costs and attorney's fees as allowable by law. The Trust Funds' option to engage in acceleration shall not be affected by the Trust Funds' acceptance of any late installment, and such acceptance shall not constitute a waiver of Acceleration or of the Trust Funds' right to immediately institute proceedings for the full balance of the indebtedness.

2.5 <u>Individual Liability of Owner</u>. Owner individually stipulates and agrees that if the Funds were to initiate and pursue legal action to collect the Settlement Sum, the Owner would suffer harm and incur substantial attorney fees and damages thereby. In order to induce the Funds not to pursue such legal action, the Owner agrees to be individually liable and responsible for the payment of all amounts due under this Agreement and any related damages that may accrue prior to full and final payment under this Agreement. In legal terms, Employer and Owner agree that they will be jointly and severally liable and responsible for the payment obligations in this Agreement.

2.6. <u>Tolling of Statute of Limitations</u>. Employer and Owner agree that if it should default under this Payment Agreement and it is necessary for the Trust Funds to institute legal proceedings, the period from the date of this Agreement up to the date that the Trust Funds have clear and unambiguous notice of default shall not be applied toward, and shall be treated as tolling, any statute of limitations that may

apply.  Further, Employer and Owner agree that if the Trust Funds should institute legal proceedings within a reasonable time after clear and unambiguous notice of default, Employer and/or Owner will not assert the defenses of laches or the statute of limitations.

2.7.   <u>Address for Payments</u>.  Except in the event of Default as described in Paragraph 2.4, Employer and Owner shall timely make all payments as described in Paragraph 2.3, as required under this Agreement to the following address or to such other address as the Trust Funds shall designate in writing:

> **San Diego County Cement Masons Pension Trust Fund**
> **c/o BeneSys Administrators**
> **3737 Camino del Rio South, Suite 300**
> **San Diego, California 92108**

2.8   <u>Priority in Bankruptcy</u>.  If a proceeding in bankruptcy is filed by or against Employer or Owner under any section of the Bankruptcy Code, Title 11 of the United States Code, all unpaid Delinquent Contributions shall be entitled to priority pursuant to 11 U.S.C. § 507 to the extent permitted by law, and Employer and Owner will cooperate with the Trust Funds in establishing such priority.

2.9   <u>Davis-Bacon Act</u>. Employer and Owner stipulate and agree that in regard to projects covered by the Davis-Bacon Act, 29 U.S.C.  276a, *et seq.,* or any other federal, state, or local law requiring the payment of prevailing wages and benefits, neither this Agreement nor any provision hereof shall in any manner extend, modify, waive, release or discharge Employer's obligation and liability to timely make payment of and restitution for fringe benefits due under the Davis-Bacon Act and related statutes and regulations, and that Employer's payment and restitution obligations and liabilities for such fringe benefits shall be determined and controlled by applicable provisions of the Davis-Bacon Act and related statutes and regulations.

2.10   <u>Miscellaneous Provisions</u>.

(a)   This Agreement shall be governed and construed in accordance with applicable federal laws and the laws of the State of California.

(b)   This Agreement shall be binding upon Employer and Owner and its respective heirs, personal representatives, successors, and assigns.

Page 5 of 7

EXHIBIT G

(c)   If any provision of this Agreement should be determined to be invalid or unenforceable, such determination shall not invalidate any other provision of this Agreement.

(d)   Any action to enforce this Agreement or for the collection of employer contributions payable under the CBA may, at the option of the Trust Funds, be brought in the United States District Court for the Southern District of California, inasmuch as it would be an action to enforce an agreement with respect to obligations governed by ERISA.  If such court does not have jurisdiction, such action to enforce this Agreement shall be brought in the Superior Court of the State of California for the County of San Diego.  Employer submits to the jurisdiction of these courts, waives any rights it may have to a jury trial, and agrees that service of process may be made upon Employer either within or outside the State of California.

## III.
## REPRESENTATIONS AND WARRANTIES

3.1   Employer and Owner have had the opportunity to receive independent legal counsel of their own choosing concerning the effect hereof, and that no representations have been made to Employer and Owner by the Trust Funds which are not herein contained.

3.2   The person signing this Agreement on behalf of Employer represents and warrants that such person and Employer have the requisite power and authority to enter into, execute, and deliver this Agreement and that this Agreement is a valid and legally binding obligation of Employer enforceable against Employer in accordance with its terms.

//

//

//

//

//

Page 6 of  7

EXHIBIT G

3.3   This Agreement may be executed in counterparts, each of which shall constitute one and the same instrument and shall be binding upon the receipt of facsimile or electronic signatures.

IN WITNESS WHEREOF, THE UNDERSIGNED HEREBY ACKNOWLEDGE THAT THEY HAVE READ, UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS SET FORTH IN THIS AGREEMENT, AND HAVE AUTHORITY TO EXECUTE THIS AGREEMENT AS PROPER OFFICERS OR DULY AUTHORIZED REPRESENTATIVES FOR THE ENTITIES ON WHOSE BEHALF THEY ARE SIGNING.

SOUTH COAST CONCRETE, INC.

DATED: 9|19 , 2016        By: _____
                               Dan Howes, President/CEO

DATED: 9|19 , 2016        _____
                          Dan Howes, Individually

SAN DIEGO COUNTY CEMENT MASONS PENSION TRUST FUND

DATED: _____, 2016      By: _____
                          Name: _____
                               Labor Trustee

DATED: 9/20 , 2016        By: James Ryan
                          Name: _____
                               Management Trustee

Page 7 of 7

3.3   This Agreement may be executed in counterparts, each of which shall constitute one and the same instrument and shall be binding upon the receipt of facsimile or electronic signatures.

**IN WITNESS WHEREOF, THE UNDERSIGNED HEREBY ACKNOWLEDGE THAT THEY HAVE READ, UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS SET FORTH IN THIS AGREEMENT, AND HAVE AUTHORITY TO EXECUTE THIS AGREEMENT AS PROPER OFFICERS OR DULY AUTHORIZED REPRESENTATIVES FOR THE ENTITIES ON WHOSE BEHALF THEY ARE SIGNING.**

SOUTH COAST CONCRETE, INC.

DATED: 9|19 , 2016     By: _____
                          Dan Howes, President/CEO

DATED: 9|19 , 2016     _____
                          Dan Howes, Individually

SAN DIEGO COUNTY CEMENT MASONS
PENSION TRUST FUND

DATED: 09/29 , 2016     By: _____
                          Name: Jack Alvarado
                                Labor Trustee

DATED: _____ , 2016     By: _____
                             Name: _____
                                   Management Trustee

Page 7 of 7

# SOUTH COAST CONCRETE, INC. / SETTLEMENT AGREEMENT

**Enter values**

| | |
|---|---|
| Loan amount | $106,760.63 |
| Annual interest rate | 10.000% |
| Loan period in years | 5 |
| Start date of loan | 9/15/2016 |
| Optional extra payments | |

| | |
|---|---|
| Scheduled monthly payment | $4,000.00 |
| Scheduled number of payments | 60 |
| Actual number of payments | 49 |
| Total of early payments | - |
| Total interest | $29,290.02 |

| No. | Payment Date | Beginning Balance | Scheduled Payment | Extra Payment | Total Payment | Principal | Interest | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| 1 | 9/15/2016 | $106,760.63 | $5,000.00 | | $5,000.00 | $4,110.33 | $889.67 | $102,650.30 |
| 2 | 10/15/2016 | $102,650.30 | $1,000.00 | | $1,000.00 | $144.58 | $855.42 | $102,505.72 |
| 3 | 11/15/2016 | $102,505.72 | $1,000.00 | | $1,000.00 | $145.79 | $854.21 | $102,359.94 |
| 4 | 12/15/2016 | $102,359.94 | $1,000.00 | | $1,000.00 | $147.00 | $853.00 | $102,212.93 |
| 5 | 1/15/2017 | $102,212.93 | $1,000.00 | | $1,000.00 | $148.23 | $851.77 | $102,064.71 |
| 6 | 2/15/2017 | $102,064.71 | $1,000.00 | | $1,000.00 | $149.46 | $850.54 | $101,915.25 |
| 7 | 3/15/2017 | $101,915.25 | $1,000.00 | | $1,000.00 | $150.71 | $849.29 | $101,764.54 |
| 8 | 4/15/2017 | $101,764.54 | $1,500.00 | | $1,500.00 | $651.96 | $848.04 | $101,112.58 |
| 9 | 5/15/2017 | $101,112.58 | $1,500.00 | | $1,500.00 | $657.40 | $842.60 | $100,455.19 |
| 10 | 6/15/2017 | $100,455.19 | $1,500.00 | | $1,500.00 | $662.87 | $837.13 | $99,792.31 |
| 11 | 7/15/2017 | $99,792.31 | $1,500.00 | | $1,500.00 | $668.40 | $831.60 | $99,123.91 |
| 12 | 8/15/2017 | $99,123.91 | $1,500.00 | | $1,500.00 | $673.97 | $826.03 | $98,449.95 |
| 13 | 9/15/2017 | $98,449.95 | $1,500.00 | | $1,500.00 | $679.58 | $820.42 | $97,770.36 |
| 14 | 10/15/2017 | $97,770.36 | $2,000.00 | | $2,000.00 | $1,185.25 | $814.75 | $96,585.12 |
| 15 | 11/15/2017 | $96,585.12 | $2,000.00 | | $2,000.00 | $1,195.12 | $804.88 | $95,389.99 |
| 16 | 12/15/2017 | $95,389.99 | $2,000.00 | | $2,000.00 | $1,205.08 | $794.92 | $94,184.91 |
| 17 | 1/15/2018 | $94,184.91 | $2,000.00 | | $2,000.00 | $1,215.13 | $784.87 | $92,969.78 |
| 18 | 2/15/2018 | $92,969.78 | $2,000.00 | | $2,000.00 | $1,225.25 | $774.75 | $91,744.53 |
| 19 | 3/15/2018 | $91,744.53 | $2,000.00 | | $2,000.00 | $1,235.46 | $764.54 | $90,509.07 |
| 20 | 4/15/2018 | $90,509.07 | $2,500.00 | | $2,500.00 | $1,745.76 | $754.24 | $88,763.31 |
| 21 | 5/15/2018 | $88,763.31 | $2,500.00 | | $2,500.00 | $1,760.31 | $739.69 | $87,003.01 |
| 22 | 6/15/2018 | $87,003.01 | $2,500.00 | | $2,500.00 | $1,774.97 | $725.03 | $85,228.03 |
| 23 | 7/15/2018 | $85,228.03 | $2,500.00 | | $2,500.00 | $1,789.77 | $710.23 | $83,438.26 |
| 24 | 8/15/2018 | $83,438.26 | $2,500.00 | | $2,500.00 | $1,804.68 | $695.32 | $81,633.58 |
| 25 | 9/15/2018 | $81,633.58 | $2,500.00 | | $2,500.00 | $1,819.72 | $680.28 | $79,813.86 |

| No. | Payment Date | Beginning Balance | Scheduled Payment | Extra Payment | Total Payment | Principal | Interest | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| 26 | 10/15/2018 | $ 79,813.86 | $ 3,000.00 | $ | $ 3,000.00 | $ 2,334.88 | $ 665.12 | $ 77,478.98 |
| 27 | 11/15/2018 | $ 77,478.98 | $ 3,000.00 | $ | $ 3,000.00 | $ 2,354.34 | $ 645.66 | $ 75,124.64 |
| 28 | 12/15/2018 | $ 75,124.64 | $ 3,000.00 | $ | $ 3,000.00 | $ 2,373.96 | $ 626.04 | $ 72,750.67 |
| 29 | 1/15/2019 | $ 72,750.67 | $ 3,000.00 | $ | $ 3,000.00 | $ 2,393.74 | $ 606.26 | $ 70,356.93 |
| 30 | 2/15/2019 | $ 70,356.93 | $ 3,000.00 | $ | $ 3,000.00 | $ 2,413.69 | $ 586.31 | $ 67,943.24 |
| 31 | 3/15/2019 | $ 67,943.24 | $ 3,000.00 | $ | $ 3,000.00 | $ 2,433.81 | $ 566.19 | $ 65,509.43 |
| 32 | 4/15/2019 | $ 65,509.43 | $ 3,500.00 | $ | $ 3,500.00 | $ 2,954.09 | $ 545.91 | $ 62,555.34 |
| 33 | 5/15/2019 | $ 62,555.34 | $ 3,500.00 | $ | $ 3,500.00 | $ 2,978.71 | $ 521.29 | $ 59,576.64 |
| 34 | 6/15/2019 | $ 59,576.64 | $ 3,500.00 | $ | $ 3,500.00 | $ 3,003.53 | $ 496.47 | $ 56,573.11 |
| 35 | 7/15/2019 | $ 56,573.11 | $ 3,500.00 | $ | $ 3,500.00 | $ 3,028.56 | $ 471.44 | $ 53,544.55 |
| 36 | 8/15/2019 | $ 53,544.55 | $ 3,500.00 | $ | $ 3,500.00 | $ 3,053.80 | $ 446.20 | $ 50,490.76 |
| 37 | 9/15/2019 | $ 50,490.76 | $ 3,500.00 | $ | $ 3,500.00 | $ 3,079.24 | $ 420.76 | $ 47,411.51 |
| 38 | 10/15/2019 | $ 47,411.51 | $ 4,000.00 | $ | $ 4,000.00 | $ 3,604.90 | $ 395.10 | $ 43,806.61 |
| 39 | 11/15/2019 | $ 43,806.61 | $ 4,000.00 | $ | $ 4,000.00 | $ 3,634.94 | $ 365.06 | $ 40,171.66 |
| 40 | 12/15/2019 | $ 40,171.66 | $ 4,000.00 | $ | $ 4,000.00 | $ 3,665.24 | $ 334.76 | $ 36,506.43 |
| 41 | 1/15/2020 | $ 36,506.43 | $ 4,000.00 | $ | $ 4,000.00 | $ 3,695.78 | $ 304.22 | $ 32,810.65 |
| 42 | 2/15/2020 | $ 32,810.65 | $ 4,000.00 | $ | $ 4,000.00 | $ 3,726.58 | $ 273.42 | $ 29,084.07 |
| 43 | 3/15/2020 | $ 29,084.07 | $ 4,000.00 | $ | $ 4,000.00 | $ 3,757.63 | $ 242.37 | $ 25,326.44 |
| 44 | 4/15/2020 | $ 25,326.44 | $ 4,500.00 | $ | $ 4,500.00 | $ 4,288.95 | $ 211.05 | $ 21,037.49 |
| 45 | 5/15/2020 | $ 21,037.49 | $ 4,500.00 | $ | $ 4,500.00 | $ 4,324.69 | $ 175.31 | $ 16,712.80 |
| 46 | 6/15/2020 | $ 16,712.80 | $ 4,500.00 | $ | $ 4,500.00 | $ 4,360.73 | $ 139.27 | $ 12,352.08 |
| 47 | 7/15/2020 | $ 12,352.08 | $ 4,500.00 | $ | $ 4,500.00 | $ 4,397.07 | $ 102.93 | $ 7,955.01 |
| 48 | 8/15/2020 | $ 7,955.01 | $ 4,500.00 | $ | $ 4,500.00 | $ 4,433.71 | $ 66.29 | $ 3,521.30 |
| 49 | 9/15/2020 | $ 3,521.30 | $ 3,550.65 | $ | $ 3,550.65 | $ 3,521.31 | $ 29.34 | $ (0.00) |

EXHIBIT G